UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROBERT LEROY MCCOY #55949/412412       CIVIL ACTION NO. 19-cv-1066

VERSUS       JUDGE ELIZABETH E. FOOTE

JULIAN WHITTINGTON ET AL       MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Robert Leroy McCoy ("Plaintiff") is a self-represented pretrial detainee housed at the Bossier Maximum Security facility.  He filed this civil rights action against Sheriff Julian Whittington and several of his deputies based on allegations of denial of medical care, failure to protect from inmate attack, denial of procedural due process, and related claims.  Before the court is a Motion for Summary Judgment (Doc. 49) filed by Defendants. For the reasons that follow, it is recommended that the motion be granted in part by dismissing all claims except Plaintiff's claim that defendants Stokes, Porter, and Barnett denied him a physician-prescribed low-sodium diet.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  A fact is "material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict

for either party.   Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).  If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Low Salt Diet**

### A. Introduction

A Bossier Parish jury convicted Plaintiff of three counts of first-degree murder, and he was transferred to Angola State Penitentiary to serve his sentence.  The Supreme Court vacated the convictions and remanded for a new trial.  McCoy v. Louisiana, 138 S. Ct. 1500 (2018).  Plaintiff was transferred from Angola to Bossier Parish to await a new trial as a pretrial detainee.

His first claim is that Bossier officials have denied him a physician-prescribed low-sodium diet.  Plaintiff alleges that, while he was in the state prison, he was diagnosed with non-Hodgkin's lymphoma and underwent several surgeries and chemotherapy.  Physicians allegedly placed him on a permanent low-sodium diet, and Plaintiff alleges that he presented Bossier officials with a "doctors form" to that effect when he arrived at the jail.  Plaintiff complains that Bossier officials have refused to provide him the prescribed diet.

### B. The Summary Judgment Evidence

Defendants move for summary judgment on this claim.  They submit an affidavit from Captain Rodney Boyer, who is the warden of Bossier Max.  Boyer testifies that all inmates at Bossier Max are provided a low-sodium diet, and a Sysco dietician was hired to create the menus.  Plaintiff requested a low-sodium diet in June 2018 and, since that date, he has been provided "a diet lower in sodium than the other inmates" receive.  Boyer states that Plaintiff is the only inmate who receives this lower-sodium diet, which excludes bologna, hot dogs, corn dogs, burritos, any processed meats, and red sauce.  If any salt is added to a meal, the inmate workers pull Plaintiff's meal before they add the seasoning. Boyer states that Bossier officials have promptly provided a low-sodium diet to Plaintiff at all times after receipt of his medical diet order.

Plaintiff's complaint, amended complaint, and memorandum in opposition to the motion (as well as other submissions) are made under penalty of perjury pursuant to 28 U.S.C. § 1746.  That makes the facts set forth in those documents competent summary judgment evidence.  <u>Hart v. Hairston</u>, 343 F.3d 762 n. 1 (5th Cir. 2003).  Plaintiff offers facts that contradict those asserted by Captain Boyer.  Plaintiff states that he presented his doctor's form to Chief Deputy Craig Stokes, Assistant Warden Dillan Porter, and Sergeant Dee Barnett that showed he had been prescribed a permanent low-sodium diet. Porter, according to Plaintiff, told him in front of the other deputies that the jail did not provide special diets and he should not expect one.  Plaintiff alleges that he brought up the issue again in the days that followed, but he was told that the decision was final.  Plaintiff filed a grievance.  In March 2019, several months after the June 2018 request for the diet, Chief

Deputy Stokes allegedly told Plaintiff that his "meals will be right."  Plaintiff states that he soon received a low-salt diet for two days, but then Sgt. Barnett denied the meals and his emergency medical requests.

In the early days of this case, the court issued an order and requested Plaintiff to respond to several questions about the details of his claims.  Plaintiff responded in what was docketed as an amended complaint (Doc. 9), made under penalty of perjury pursuant to Section 1746.  One question asked what harm was caused to Plaintiff by the events that make the basis of his medical claim.  He generally alleged chronic and substantial pain.  He also more specifically alleged that the area around his heart is constantly painful and that he now has to take a higher dosage of Lisinopril blood pressure medication because of the denial of his medically approved diet (plus other alleged medical care shortcomings), that "now make a life-threatening situation even worser."  He contends that he has severe chest pains and headaches for at least a few hours a day, and it affects his vision, makes him dizzy, short of breath, and unable to stand without support.

### C. Analysis of the Claim

"The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'"  Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020), quoting Thompson v. Upshur Cty., Tex., 245 F.3d 447, 457 (5th Cir. 2001).  A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).  Deliberate indifference will be found only where the prison official

"knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S.Ct. 1970, 1984 (1994).

There is a genuine dispute between the facts presented.  Plaintiff states under penalty of perjury that his diet has been denied, except for two days, and that he has suffered medical issues as a result.  Defendants offer testimony that Plaintiff has been given a low-sodium diet that satisfied the physician order.  On summary judgment, "[a]ll facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings." Renfroe v. Parker, 974 F.3d 594, 599 (5th Cir. 2020).  Thus, the court may not resolve the factual dispute at this stage of the case.  Plaintiff's version of the facts must be accepted for current purposes.

The denial of a medically-prescribed diet may amount to deliberate indifference to a serious medical need.  Jones v. Texas Department of Criminal Justice, 880 F.3d 756 (5th Cir. 2018) (diabetic prisoner denied special diet during lockdown alleged that blood sugar rose and resulted in a heart attack).  But such claims are sometimes dismissed because evidence shows that the prisoner received other treatment and monitoring, and the lack of a particular diet was merely a disagreement about the quality and quantity of medical treatment.  See Warren v. Gusman, 2017 WL 1373875, *13-14 (E.D. La. 2017) (collecting cases).

Plaintiff presents summary judgment evidence that Bossier officials refused to provide him a low-sodium diet that was prescribed by a physician to address health problems stemming from cancer treatments that affected his heart.  Plaintiff also states that

the lack of a diet has resulted in specific, severe symptoms and is a serious danger to his health. Those facts, which must be accepted for summary judgment purposes, could allow a reasonable jury to find that the Bossier officials were deliberately indifferent to Plaintiff's serious medical needs with respect to his diet. The resolution of this claim will require an assessment of the relative credibility of the witnesses, so summary judgment is not recommended on this claim.

### D. The Proper Defendants

The next issue is which defendants Plaintiff has demonstrated are potentially liable for this claim. A person can be held liable under Section 1983 only for his or her own acts or omissions. The doctrine of respondeat superior does not apply, so Section 1983 does not permit a cause of action based on the conduct of subordinates. Stewart v. Murphy, 174 F.3d 530, 536 (5th Cir. 1999). To state a cause of action under Section 1983, the plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995).

Plaintiff alleges that Assistant Warden Porter, Deputy Craig Stokes, and Sgt. Dee Barnett were personally involved in the denial of his low-sodium diet. Porter is alleged to have directly denied the request for the diet and said his decision was final. Stokes is alleged to have been presented with the diet order, told Plaintiff he would look into the matter, but did nothing. Plaintiff alleges that Barnett threatened physical force if Plaintiff did not eat a "salty tray" despite knowing Plaintiff's health condition. Barnett is also accused of falsely logging that Plaintiff refused his food tray and telling Plaintiff that he

would not get any special trays in the jail.  Plaintiff adds that, after he received a low-sodium tray for two days, Barnett "continued to deny said meals."

There are no allegations against any other defendants with respect to this claim, and that includes Sheriff Whittington.  Plaintiff was asked to describe the personal involvement of each defendant in the events alleged, and he wrote a few paragraphs about Sheriff Whittington.  Most of what he wrote had to do with medical appointments in New Orleans, discussed below, and none of it had anything to do with the low-sodium diet.  See Doc. 9, question 17.

Plaintiff has not made specific allegations or presented any summary judgment evidence to indicate that Sheriff Whittington or any defendants other than Stokes, Porter, and Barnett had any personal involvement in the alleged denial of his low-sodium diet.  Accordingly, only those three defendants should remain with respect to this claim.

**Medical Appointments in New Orleans**

When Plaintiff was housed at Angola, he received treatment from physicians in New Orleans.  He alleges that, upon his arrival in Bossier Parish, he told Assistant Warden Porter about two upcoming hematology-oncology appointments in New Orleans, but Porter told him that they would not take him to New Orleans (about a six hour drive) for an appointment.  Plaintiff contends that he missed a tele-med appointment, but the threat of legal action motivated Sheriff Whittington to honor that appointment.

Defendants submit copies of Plaintiff's medical records from their facility, where he arrived on June 1, 2018.  Doc. 49, Ex. B at 063.  The records include a note on June 18, 2018 that Plaintiff was to be transported to New Orleans for a CT scan.  The next day, it

was noted that Plaintiff's records had been received from Angola, and a request had been made to transfer services to UHS (now Ochsner LSU Health Shreveport), which is less than an hour from Bossier Max.  The sheriff attaches a copy of a contract that he has with Ochsner LSU to treat inmates housed at Bossier Max.  Doc. 49, Ex. D.  This transfer of services had already been discussed with Plaintiff on June 15, 2018, and Plaintiff said that he wished to consult his counsel prior to attending appointments in Shreveport.  Ex. B at 061.  By June 27, 2018, Plaintiff was seen at the oncology clinic, and it was noted that there was no evidence of recurrence of disease on his imaging.  A cardiology visit on July 24, 2018 showed that Plaintiff was asymptomatic and should return for evaluation in six months.  By November 2018, Plaintiff's treatment for lymphoma was said to be completed, and yearly observation was recommended.  A number of other such medical visits are noted in the records at Exhibit B, with nothing more remarkable than an increase in blood pressure medication and treatment for a wound on a toe.

Plaintiff complains that appointments made with New Orleans physicians were not kept, but the record shows that his care was promptly transferred to Shreveport physicians. The appointments were kept in Shreveport, and there is no indication of any harm as a result of the brief delay associated with the transfer.  Even if Plaintiff disagreed with the transfer, his disagreement with the methods of treatment afforded to him does not state a constitutional claim for deliberate indifference to serious medical needs.  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).  Defendants are entitled to summary judgment with respect to claims associated with medical appointments made after Plaintiff arrived in Bossier Parish.

**Verbal Abuse**

Plaintiff alleges that when he was booked into Bossier Max, Sgt. Barnett insulted and threatened him because he had won his case in the Supreme Court.  Plaintiff's complaint and other filings include other scattered allegations of verbal abuse, insults, and threats.

"[A]s a rule, 'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation."  McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) ("an intimidating show of force" by "twenty-two officers armed with sticks and threatening demeanor," though arguably "excessive," did not state a claim where no actual physical harm was inflicted); Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."). Even severe and retaliatory threats have been found insufficient.  Gibson v. Jean-Baptiste, 802 Fed. Appx. 858 (5th Cir. 2020) (officer allegedly threatened to kill transgender inmate in retaliation for prior lawsuit).  Accordingly, Defendants are entitled to summary judgment with respect to all claims of verbal abuse, insults, or threats.

**Failure to Protect**

Plaintiff alleges that on September 21, 2018, Sgt. Dee Barnett had been housing segregation inmates in cells in D Pod, where pretrial detainees were also housed.  One of the segregation inmates refused to return to his cell after his recreation time, and Sgt. Barnett was called to D Pod.  Barnett then began screaming at the segregation inmate and threatening to kill him if he did not get in his cell, which the inmate then did.  Plaintiff alleges that Barnett then went on a tirade about the inmates not running the jail and, in the

course of it, he stated, "Robert McCoy, that also goes for you!"  Plaintiff states that this mention of his name made the segregation inmate angry at both Barnett and Plaintiff, and the inmate promised that he would beat up both of them when his door was opened.

Plaintiff states that on September 22, 2018, the segregation inmate began kicking his door, screaming at the pod deputy and promising that he was going to fight Plaintiff if his door opened while Plaintiff and the other general population inmates were on recreation.  Deputy Downey got on the intercom and admonished the inmate, which Plaintiff says only added to his rage.  Plaintiff states that he asked Deputy Downey to call Assistant Warden Porter to the area because Plaintiff perceived that he was at risk of serious harm because Downey had goaded the inmate and even said that Plaintiff was a prospect to "beat his ass."

Later, during pill call, Deputy Downey allegedly opened the segregation cell door, and two segregation inmates began screaming and threatening Plaintiff.  He states that Deputy Downey was in the booth "smiling and pointing towards the segregation door— now open."  Plaintiff states that one of the segregation inmates came downstairs with his right hand wrapped, and he struck Plaintiff twice in the face.  Downey was allegedly "in the booth laughing at pointing at us fighting."  Deputy Brown soon arrived and separated the inmates.  Plaintiff contends that defendants Barnett and Downey orchestrated the attack.

Defendants have not offered an affidavit or other testimonial evidence regarding this failure-to-protect claim.  They contend in their memorandum that the cell door for the segregation inmates was opened during pill call, the inmate who began the altercation with

Plaintiff was not supposed to leave his cell, and a deputy broke up the fight immediately. Defendants state that a review of the video surveillance of the incident shows Plaintiff standing at the bottom of the stairs yelling toward the other inmate and instigating the fight.

Defendants did not attach a copy of the surveillance video to their motion, but Plaintiff submitted a flash drive (Doc. 58) that includes a 3:33 minute video (no audio) labelled "Robert McCoy Fight."   At about 1:13, an inmate (presumably Plaintiff) approaches a stairwell in the pod that leads to the upstairs cells.  He appears to be looking upstairs, and he waves his right arm five times as if to invite someone to come down.  At 2:13, Plaintiff puts down a cup he is holding.  The door for cell 201 soon begins to open, and Plaintiff again motions for someone to "come on down" as he waits at the bottom of the stairs.  The other inmate exits the cell and comes down the stairs, with his left hand wrapped in white material, and plaintiff moves toward the stairs to meet him.  The two men square up and immediately begin exchanging punches.  An officer appears at 2:22, and by 2:43, the officer has grabbed the still-punching Plaintiff and pulled him away from the fight.  The other inmate immediately walked back to his cell, and Plaintiff was escorted from the pod with no need for force.

Prison officials have a duty to protect inmates from violence at the hands of other prisoners.  Farmer v. Brennan, 114 S.Ct. 1970 (1994); Horton v. Cockrell, 70 F.3d 397, 400-01 (5th Cir. 1995).  However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 114 S.Ct. at 1977.  To establish a failure-to-protect claim, the plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm

and that prison officials were deliberately indifferent to his need for protection."  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).   This standard is based on the Eighth Amendment, but it also applies to pretrial detainees.  Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc).

Plaintiff has submitted multiple filings in which he stated, under penalty of perjury, his version of the facts surrounding this fight.  But the video evidence tells quite a different story.  In Scott v. Harris, 127 S.Ct. 1769 (2007) the plaintiff in a police chase case testified that he was driving quite safely, not a threat to pedestrians or other drivers, and slowed for turns and intersections.  A video told a different story and clearly depicted the plaintiff's car racing down narrow roads in the dead of night at shockingly fast  speeds, swerving around more than a dozen cars, forcing cars off the road, running multiple red lights, and otherwise driving dangerously.  The Court acknowledged that facts must be viewed in the light most favorable to the non-moving party if there is a genuine dispute as to those facts, but it held that there was no genuine dispute when the story told by the plaintiff was "blatantly contradicted by the record, so that no reasonable jury could believe it."  Scott, 127 S.Ct. at 1776.

The Fifth Circuit has cited Scott and held that, at the summary judgment stage, "facts evident from video recordings taken at the scene" may overcome a plaintiff's description of the facts.  Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).  Defendants have raised qualified immunity as a defense, and the court "need not accept a plaintiff's version of the facts for purposes of [QI] when it is blatantly contradicted and utterly discredited by video recordings."  Garza v. Briones, 943 F.3d 740, 744 (5th Cir. 2019)

(cleaned up).  In <u>Garza</u>, still photos and a witness account relied upon by the plaintiff could not defeat summary judgment when they were directly contradicted by dashcam footage that confirmed the police officers' accounts.

The video in this case does not depict what Deputy Downey did or why he did it, nor does it include audio of what anyone said.  But it does show that Plaintiff's version of the facts in which he is an innocent victim who is attacked by a prisoner released from a cell is a gross mischaracterization.  Even without audio, it is evident that Plaintiff actively engaged the other inmate while the inmate was locked inside a cell, and Plaintiff motioned repeatedly with a clear invitation for the inmate to come down and fight him.  When the other inmate was released, Plaintiff moved forward to engage him and immediately participated in the fight; both men began punching at the same time.  Plaintiff contends that he disengaged and raised his hands immediately when a deputy approached, but the video shows that the deputy had to grab Plaintiff, who was still trading punches, and pull him from the fight.

No reasonable juror could find, based on the clear video evidence, that Downey or anyone else failed to protect Plaintiff from attack by a fellow inmate.  Plaintiff actively encouraged, invited, and participated in the fight.  There is not one second of the video footage that indicates Plaintiff attempted to avoid the fight in any way.  Instead, the footage indicates that Plaintiff actively desired the fight.  Those facts do not allow a verdict against a defendant for failure to protect Plaintiff from that fight.  Defendants are entitled to summary judgment with respect to this claim.  The same is true with respect to Plaintiff's

conclusory allegation that the alleged failure to protect him was retaliation for filing grievances.

Plaintiff also contends that the defendants were negligent in their failure to protect him from the fight.  The civil rights statute invoked by Plaintiff, 42 U.S.C. § 1983, does not provide a cause of action against a state official for a mere negligent act that causes unintended injury.  Daniels v. Williams, 106 S.Ct. 662 (1986) (affirming dismissal of inmate's claim that he slipped on a pillow negligently left on the stairs by a deputy).  Specifically,  mere negligent failure to protect an  inmate from  attack  does  not  justify liability under § 1983.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).

**Procedural Due Process**

Plaintiff alleges that, after another fight, he was placed in punitive segregation pending a disciplinary hearing.  He complains that Sgt. Anthony Evans did not give him sufficiently factually specific notice to permit him to understand what conduct was at issue so that he could identify relevant evidence and present a defense.  Evans, Porter, and Boyer were allegedly on a committee that refused to allow Plaintiff to explain why he denied the charges.  Plaintiff contends that no evidence was presented at the hearing, and the committee simply adopted the report of staff members with no further investigation, and he was placed in segregation for 20 days.  Plaintiff also complains that there was no written statement by the fact finders regarding the evidence relied on or reasons for the disciplinary action.

Defendants did not specifically attack this claim in their motion for summary judgment, but it fails to state a claim on which relief may be granted.  Prisoners have certain

procedural due process rights, but they are not applicable unless a constitutionally protected liberty interest is at stake.  Such a liberty interest is generally not at issue unless the prisoner faces restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 115 S.Ct. 2293 (1995).  The Sandin holding has been applied to pretrial detainees.  Gibbs v. Grimmette, 254 F.3d 545, 548 n. 1 (5th Cir. 2001) (applying Sandin to the due process claim of a pretrial detainee); Rhine v. City of Mansfield, 499 Fed. Appx. 334, 335 (5th Cir. 2012) (applying Sandin to due process claim of pretrial detainee who alleged wrongful administrative segregation).

Prisoner Sandin was found guilty of misconduct after yelling at an officer, and he was sentenced to 30 days disciplinary segregation in a special holding unit.  The Court found no liberty interest at issue because discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a sentence imposed by a court.  The solitary confinement and segregation did not present a dramatic departure from the basic conditions of the prisoner's sentence.  The Fifth Circuit, after Sandin, has found that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996).  Absent extraordinary circumstances, segregation, being an incident to the ordinary life of a prisoner, will never be a ground for a procedural due process claim.  Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998).

Plaintiff alleges that he was placed in segregation for 20 days.  That brief detention was not an atypical and significant hardship in relation to the ordinary incidents of his incarceration, so procedural due process claims may not be based on the disciplinary charge

or how the hearing was conducted.  The court should dismiss this claim sua sponte for failure to state a claim on which relief may be granted.  See Alexander v. Trump, 753 Fed. Appx. 201, 208 (5th Cir. 2018) (sua sponte dismissal recommended by report and recommendation satisfied notice and fairness requirements).

**Violation of Policies and Regulations**

Plaintiff asserts a related claim that Defendants failed to follow "written policy" regarding the housing of inmates and the conduct of disciplinary proceedings.  Defendants have not specifically attacked this claim in their motion, but it fails to state a claim on which relief may be granted.  It should be dismissed sua sponte.

Plaintiff is presenting a claim under 42 U.S.C. § 1983, which requires that he show a defendant violated federal laws or the Constitution.  The statute does not permit a remedy for the mere violation of prison policies or even state law.  Scheidel v. Secretary of Public Safety & Corrections, 561 Fed. Appx. 426 (5th Cir. 2014) ("violations of prison rules do not alone rise to the level of constitutional violations and, therefore, such claims are not actionable under § 1983."); Sylvester v. Cain, 311 Fed. Appx. 733, *2 (5th Cir. 2009) ("violations of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983"); and Brown v. Williams, 124 Fed. Appx. 907, 909 (5th Cir. 2005) ("a mere violation of state law does not state a constitutional claim under 42 U.S.C. § 1983").  Accordingly, all claims based on allegations of violations of jail policy or state laws or regulations should be dismissed for failure to state a claim on which relief may be granted.

**Conclusion**

It is recommended that all claims be dismissed with the exception of Plaintiff's claim that he was denied his physician-prescribed low-sodium diet.  The only appropriate defendants with respect to that claim are Porter, Stokes, and Barnett.  Thus, all claims against the remaining defendants should be dismissed, and only those three defendants should remain to continue defendant against the diet claim.

Accordingly,

It is recommended that the motion be granted in part as follows: All claims associated with medical appointments made after Plaintiff arrived in Bossier Parish should be dismissed with prejudice; all claims of verbal abuse, insults or threats should be dismissed with prejudice; all claims based on failure to protect should be dismissed with prejudice; all claims based on procedural due process should be dismissed with prejudice; and all claims for violations of jail policy or state laws or regulations should be dismissed with prejudice.  All claims against Sheriff Julian Whittington, Warden Boyer, Sgt. Anthony Evans, and Deputy E. Downey should be dismissed with prejudice.  The motion for summary judgment should be denied with respect to Plaintiff's claim that defendants Deputy Craig Stokes, Warden Dillan Porter, and Sgt. Dee Barnett denied him a physician-prescribed low-sodium diet.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.   See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of February, 2021.

Mark L. Hornsby
U.S. Magistrate Judge